UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                                              Case No. 21-20353

vs.                                                                  HON. MARK A. GOLDSMITH

TYRONE DOUGLAS,

    Defendant.

_____/

**OPINION & ORDER**
**(1) DENYING DEFENDANT'S MOTION TO SUPPRESS (Dkt. 19) AND (2) DENYING DEFENDANT'S MOTION TO REINSTATE BOND (Dkt. 47)**

Charged with felon-in-possession of a firearm, Defendant Tyrone Douglas moves to suppress a gun recovered from his person during an arrest (Dkt. 19) and to reinstate bond (Dkt. 47). For the reasons that follow, the Court denies Douglas's motions.[1]

**I. BACKGROUND**

As evidenced by footage from the camera on their vehicle's dashboard, three officers with the Detroit Police Department—Tylerscott Alleyne, Dillion Kenny, and Curtis Morris—were patrolling Schaefer Highway in Detroit, Michigan when they stopped in front of an apartment

---

[1] In addition to the motion to suppress, the briefing includes the Government's response (Dkt. 24) and Douglas's reply (Dkt. 26). In addition to the motion to reinstate bond, the briefing includes the Government's response (Dkt. 49) and Douglas's reply (Dkt. 26). The Court held an evidentiary hearing on Douglas's motions on June 27, 2022, after which Douglas filed supplemental briefs on his motion to reinstate bond (Dkt. 55) and motion to suppress (Dkt. 56), and the Government filed a supplemental brief on the motion to suppress (Dkt. 59).

complex. See Dashcam Video at 0:24 – 0:25 (Ex. B).[2] Multiple people were standing outside the building. See id. One of them was Douglas.

Douglas testified that he was holding a beer when the officers arrived. Hr'g Tr. at 116. It is "unlawful for any person to consume alcoholic liquor on any street, sidewalk, alley, or publicly-owned area." 2019 Detroit City Code § 31-5-2; see also Mich. Comp. L. § 436.1915 (allowing local governments to prohibit the "the possession or consumption of alcoholic liquor" in any "publicly owned area"). The parties dispute precisely where Douglas was standing when the police showed up, which is not clear from any of the video footage. Douglas testified that he was standing on the grass, not on the public sidewalk. Hr'g Tr. at 117. Morris did not testify, but the other two officers testified that they saw Douglas standing on the sidewalk with a drink in his hand. Id. at 11, 59.

Following the arrival of the police, Douglas walked toward the building. See, e.g., Dashcam Video at 00:28. Alleyne ran after him and approached Douglas on or next to a small porch that stood in front of the building's door. Id. at 0:30–0:32; Alleyne Bodycam at 0:28–00:31. Kenny and Morris followed shortly after Alleyne. Dashcam Video at 0:32–0:34; Kenny Bodycam at 0:30–0:33; Morris Bodycam at 0:03–0:06. Alleyne testified that, upon making contact with Douglas at the porch, Alleyne saw Douglas "start[] reaching towards his right side of his body" and producing a revolver from his pocket. Hr'g Tr. at 17–18. Alleyne initiated a physical scuffle, and the officers wrestled Douglas to the ground. See Dashcam Video at 00:34–01:05; Alleyne

---

[2] In addition to video taken from this dashboard camera, the Government filed video from Alleyne's body camera (Ex. B), Kenny's body camera (Ex. C), Morris's body camera (Ex. D), and the vehicle's rear camera (Ex. E) as exhibits to their response to Douglas's motion to suppress. These videos were filed in the traditional manner and so are not available on the docket.

Bodycam at 0:30 – 1:05; Morris Bodycam at 0:05–0:40; Kenny Bodycam at 0:32–1:00. Douglas was found to have been carrying a handgun. See, e.g., Kenny Bodycam at 1:00–1:05.

Douglas was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Dkt. 15). He was originally released on bond—first on home detention (Dkt. 13), and then on curfew directed by Pretrial Services (Dkt. 29). But the Government submits that, while on curfew, Douglas tested positive for cocaine and marijuana multiple times and failed to attend a substance abuse assessment. Gov't Resp. to Def. Mot. for Bond at 3. The Court amended Douglas's release conditions back to home detention, after which Douglas missed multiple treatment sessions and drug tests. Id. at 4. Douglas was then ordered detained pending trial (Dkt. 37).

## II. ANALYSIS

Douglas argues that the firearm recovered from his person was seized in violation of the Fourth Amendment because the arresting officers did not have reasonable suspicion for an investigatory stop or probable cause to make an arrest. See Def. Suppl. Br. in Supp. Mot. to Suppress at 2. He also requests that the Court grant him bond again. See Def. Mot. for Bond. The Court addresses each point in turn.

### A. Motion to Suppress

The seizure of a firearm made during a warrantless arrest is admissible if the arresting officer had probable cause to believe that the suspect was breaking the law. See, e.g., United States v. Watkins, No. 14-20034, 2015 WL 753344, at *3 (E.D. Mich. Feb. 22, 2015) (denying motion to suppress firearm discovered pursuant to arrest for misdemeanor) (citing United States v. Campbell, 486 F.3d 949, 958 (6th Cir. 2007)). Probable cause is "not a high bar"; it "requires only a probability or substantial chance of criminal activity . . . ." D.C. v. Wesby, 138 S. Ct. 577, 586

3

(2018) (punctuation modified, citations omitted). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

Alleyne and Kenny both testified that they saw Douglas with an open alcohol container on a public sidewalk. Alleyne stated that, when the officers pulled their vehicle in front of the apartment complex, he "observed Mr. Douglas standing on the sidewalk drinking alcohol from . . . an open alcohol can in public." Hr'g Tr. at 11. Kenny also stated that he "observed Douglas . . . on the sidewalk with an open alcohol container," and he clarified that Douglas was on the "public sidewalk." Id. at 59. This mutually corroborating testimony supports the conclusion that the officers had probable cause to believe that Douglas was breaking the law, see 2019 Detroit City Code § 31-5-2, which validated their decision to make an arrest, see Watkins, 2015 WL 753344, at *3.

Douglas's attempts to challenge these facts are unconvincing. Douglas attacks Alleyne's credibility by raising alleged inconsistencies in the way Alleyne described (i) whether or not he spoke to Douglas prior to exiting the police vehicle, (ii) the manner in which Douglas moved from the vicinity of the sidewalk to the apartment building, and (iii) the moment at which Alleyne noticed that Douglas had a firearm. See Def. Suppl. Br. in Supp. Mot. to Suppress at 4–5.[3]

---

[3] More specifically, Alleyne testified that he had not spoken to Douglas before leaving his vehicle, see, e.g., Hr'g Tr. at 20, though Alleyne's statements to other officers after the arrest as well as certain representations in the Government's briefing indicate that Alleyne did speak to Douglas through the vehicle's window. See Def. Br. in Supp. Mot. to Suppress at 4; see also Gov't Suppl. Br. at 16–17. Alleyne also testified that Douglas walked "haste-fully" away from the street, Hr'g Tr. at 50, while Defendants see the video evidence as showing Douglas "walking at a normal, somewhat slow, pace," Def. Br. in Supp. Mot. to Suppress at 4. Lastly, Alleyne testified that he saw Douglas in possession of a gun when Alleyne was on or near the front porch, Tr. 17–18, which Douglas considers to be in tension with Alleyne's statement recorded on his body camera that

4

However, these claimed inconsistencies are not material, such that the Court should reject Alleyne's testimony on the salient issue of whether he saw Douglas's drinking on the public sidewalk.

On that point, Alleyne's testimony is confirmed by Douglas himself, who is captured on video acknowledging his public drinking. Kenny's body camera recorded Douglas explaining his version of the arrest, in which he admitted: "I had a beer in my hand, clearly." Kenny Bodycam at 10:30. Kenny responded: "open intox—which you're not allowed to have in public, on the sidewalk." Id. at 10:35. Douglas's next words were: "I know." Id. at 10:40.

Alleyne's testimony is further corroborated by footage of his account of Douglas's arrest made to Alleyne's supervisor less than twenty minutes after the event. Alleyne began that account with the statement: "The gentleman was drinking outside on the sidewalk." Alleyne Bodycam at 18:45. And Alleyne's position finds further support in the testimony of Kenny, whose credibility Plaintiffs have no grounds to attack.[4] Like Alleyne, Kenny averred that he saw Douglas drinking alcohol on the public sidewalk.

The witnesses presented by Douglas fail to cast any significant doubt on the consistent testimony of these two officers. Douglas points the Court to the averments of Eric Hyler and Jeniro Brown, who were present with Douglas in front of the apartment building. See Def. Suppl.

---

Douglas started pulling out his gun after moving toward the door of the building, see Def. Br. in Supp. Mot. to Suppress at 5 (citing Alleyne Bodycam at 9:18)—though these last two statements do not appear to be in conflict.

[4] Douglas asserts that Kenny, too, is not "credible," based on an attack on the officer's perceptiveness; Douglas asserts: "Kenny did not even notice that other people were outside drinking at the time." Def. Br. in Supp. Mot. to Suppress at 3. This characterization does not accurately represent the officer's testimony. Kenny stated that he "only saw Mr. Douglas drinking alcohol in public." Hr'g Tr. at 29. There is no merit to Douglas's suggestion that the Court should discount Kenny's testimony because he did not provide a detailed description of the activities of individuals not observed to be breaking the law.

5

Br. in Supp. Mot. to Suppress at 6. Hyler stated that he saw Douglas standing on the grass and did not see him standing on the sidewalk with alcohol in his hand. Hr'g Tr. at 78–79. But Hyler "wasn't really looking at [people's] feet." Id. at 82. Brown also testified that he did not see Douglas on the sidewalk, including at the time the police arrived, id. at 92–93, but he also evinced some confusion as to where people involved in the arrest were located, as he thought the officers "came from behind [the] bushes" rather than from the street," id. at 102. The Court does not find the suggestion credible that these individuals were carefully attending to the exact spot where Douglas was standing while they socialized together.

Based on the preponderance of the evidence, the record supports the conclusion that the officers had observed Douglas breaking the law, thereby providing probable cause for the arrest and justifying the resultant search and seizure of the firearm. Watkins, 2015 WL 753344, at *3. The Court denies Douglas's motion to suppress.[5]

### B. Renewed Motion for Bond

A court's decision on detention may be reopened if the defendant presents "new information" that "has a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of any other person in the community." United States v. Watson, 475 F. App'x 598, 600 (6th Cir. 2012). Douglas now presents two new explanations for his past missteps with this Court: (i) his positive drug test was a "false positive" resulting from his ingestion of Mucinex D, a medication Douglas takes for an

---

[5] Douglas also suggests that the arrest "immediately turned into an unlawful arrest when Alleyne grabbed Mr. Douglas upon contact, and then, with Kenny, threw Mr. Douglas to the ground." Def. Suppl. Br. in Supp. Mot. to Suppress at 8. Douglas does not further explain how this allegation should result in suppression of the firearm he was carrying when arrested, but the fact that Douglas was arrested with probable cause again dispenses with this argument.

upper respiratory infection; and (ii) his failure to report to Pretrial Services was due to his depression, for which he is now taking medication. See Def. Mot. for Bond at 6.

These explanations do not weaken this Court's determination that, upon a consideration of the factors identified in 8 U.S.C. § 3142(g), no conditions of release will reasonably assure Douglas's appearance at trial. Initially released on bail, Douglas has not given the Court reason to believe that he can be trusted with this freedom. As recounted above, Douglas has had extensive issues complying with pretrial conditions and requirements that he report to Pretrial Services in relation to the present proceedings. A positive drug test led the parties to stipulate to an adjournment of an evidentiary hearing on Douglas's motion to suppress, see Gov't Resp. to Def. Mot. for Bond at 4 (citing 10/20/21 Stip. & Order (Dkt. 30)), and Douglas appeared late for that rescheduled hearing, id. at 5 (citing 1/28/22 Stip. & Order (Dkt. 43)). Even before Douglas tested this Court's leniency in the present action, he had a history of violating state probation conditions and failing to appear before a state district court. See id. Douglas deserves commendation and support for his decision to seek help for his depression, but this changed circumstance on its own does not reassure the Court that Douglas can now be trusted to appear before this Court.

As to the drug test, Douglas is unclear in asserting whether he believes that all of Douglas's numerous failed drug tests are invalidated by the fact that he was taking Mucinex D, as Douglas's motion refers to only one undated test. See Def. Mot. for Bond at 7. Douglas states that "retesting showed inconclusive results resulting in a finding of false/positive." Id. Without more information on which test Douglas is challenging or access to the single test which Douglas characterizes as "inconclusive," the Court does not revisit its conclusion that Douglas has shown an inveterate inability to comply with conditions of release. The Court sympathizes with Douglas's desire to see and support his family. See Def. Mot. for Bond at 8. If he had complied with the Court's

original conditions, he may have been in a position to do so.  But Douglas has not presented new information sufficient to cast doubt on this Court's determination that no conditions of release will reasonably assure Douglas's appearance.  His renewed motion for bond is denied.

### III. CONCLUSIONS

For the reasons explained above, the Court denies Douglas's motion to suppress (Dkt. 19) and motion to reinstate bond (Dkt. 47).

SO ORDERED.

Dated:  September 6, 2022                              s/Mark A. Goldsmith
        Detroit, Michigan                              MARK A. GOLDSMITH
                                                       United States District Judge